J. P. COZZENS, Trustee for Citizens Growth Properties, a Real Estate Investment Trust organized and existing under the laws of the State of Ohio, and John William Hoppers, Receiver for Minit-Man Investment Company, Plaintiffs,

v.

BAZZANI BUILDING COMPANY, Defendant and Third-Party Plaintiff,

v.

WESTCHESTER FIRE INSURANCE COMPANY, a foreign corporation, Third-Party Defendant.

Civ. A. No. 5–71441.

United States District Court, E. D. Michigan, S. D.

July 11, 1978.

Lincoln Welton, Detroit, Mich., for defendant and third-party plaintiff; Ivan E. Barris, Detroit, Mich., of counsel.

William R. Still, Detroit, Mich., for third-party defendant.

## MEMORANDUM OPINION AND ORDER GRANTING THIRD–PARTY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

PHILIP PRATT, District Judge.

This action for breach of contract was brought on July 31, 1975. The contract in question involved the construction of a building to be used as a car-wash facility. The only defendant remaining in the action is Bazzani Building Company, which served as general contractor in the construction of the building. The substance of plaintiffs' allegations against Bazzani is that Bazzani performed negligently, breached express and implied warranties. As a result of these derelictions, it is alleged, the walls of the building cracked and the foundation subsided, these events causing plaintiffs to vacate the building and terminate the business. The case was set for jury trial on April 4, 1978.

On the day of trial, the Court followed its usual procedure in civil cases of inquiring into the prospects of an amicable settlement of the dispute by the parties between themselves. Mr. L. Graham Ward, of the law firm of Dice, Sweeney & Sullivan, advised that his firm had been retained to represent Bazzani by Westchester Fire Insurance Company, Bazzani's insurance carrier with respect to its contractor's liability policy. Efforts toward settlement were hindered, Mr. Ward reported, because of the substantial possibility of conflict that had arisen between the carrier and the client with respect to the coverage of the policy of insurance. He felt himself to be discomfited, for while he recognized the duty of loyalty and zealous representation incumbent upon him with respect to Bazzani, on the other hand his firm enjoyed a long-standing relationship with Westchester and its parent company, a relationship that left its imprint, unavoidably, on his management of the case. The carrier's position, as communicated to the Court, was that it was unwilling to discuss settlement until the question of coverage *vel non* had been decided, but was quite willing to carry on the defense of the case, reserving the coverage issue for later determination.

This was the first time that either the Court or, apparently, plaintiffs' counsel was made aware of the possibility of conflict between the defendant and its carrier. The Court reluctantly adjourned the trial, directed Bazzani to file a third-party complaint against Westchester seeking a declaratory judgment regarding the carrier's rights and duties vis-à-vis the defendant with respect to the principal dispute, and prescribed a timetable for the filing of cross-motions of summary judgment. It is upon the motions so filed that the matter is presently before the Court. Oral arguments were heard on June 12, 1978.

The respective positions of the parties are not difficult to recapitulate. Westchester states that the evidence adduced at trial may establish the applicability of certain exclusions provided for in the policy, commonly known as "business risk exclusions."[1] If the facts indeed turn out to be such that the business risk exclusions are brought into play, it contends, the result will be that Westchester will be relieved of liability for whatever judgment may be awarded against Bazzani. While not conceding the validity of this argument, Bazzani does not reach the merits thereof; instead it argues only that by reason of Westchester's conduct of the case up to the point of trial and its failure to alert Bazzani in clear and timely fashion of the known possibility of conflict, Westchester is estopped to deny liability, even conditionally, at this point. For the reasons set forth below, the Court holds that Westchester is estopped to rely on the exclusions of its policy to defeat its liability for whatever judgment may be entered herein against Bazzani, up to the dollar-amount limits of the policy.

The business risk exclusions on which Westchester relies are set forth in the policy in the following language:

"This insurance does not apply:

\* \* \* \* \* \*

"(l) to property damage to the named insured's products arising out of such products, or any part of such products;

"(m) to property damage to work performed by or on behalf of the named insured, arising out of the work or any portion thereof, or out of materials, parts, or equipment furnished in connection therewith;

"(n) to damages, claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products, or work completed by or for the named insured, or of any property

---

1. Westchester's position is, perhaps, somewhat more ambiguous than the foregoing statement would suggest. In its own motion for summary judgment, at paragraph 5, it states, in effect, that the nature of the injuries to the building, as they are alleged in the principal Complaint, is such that coverage is not provided relative thereto by the policy.

"Under the terms of the aforementioned policy of insurance and the exclusions contained therein and incorporated herein by reference as above referred to, the allegations contained in the principal Plaintiff's Complaint against Defendant and Third-Party Plaintiff, BAZZANI BUILDING COMPANY, are excluded from coverage under the terms of the policy. . . ."

Accordingly, in its prayer for relief it requests "a declaration that the provisions of the policy exclude coverage for the acts complained of in the principal Complaint against Defendant and Third-Party Plaintiff, BAZZANI BUILDING COMPANY, . . ."

On the other hand, in its response to Bazzani's motion for summary judgment, Westchester asks the Court, in the alternative, "to schedule the matter for Trial between the principals to this action with specific questions for the jury *as to proximate cause* and a hearing in regard to the issues of coverage and estoppel subsequent to Jury Trial which, if favorable to Defendant and Third-Party Plaintiff, will not necessitate a decision on the hearing of coverage and if unfavorable to Defendant and Third-Party Plaintiff, then a decision regarding coverage and estoppel can be made subsequent to the special findings by the jury in the Trial between the principals to this action." (Emphasis added).

The reference to special findings by the jury suggested to this Court's mind the possibility that the question of the applicability of the exclusions relied on by Westchester would turn on the facts found by the jury. Upon the inquiry of the Court, Westchester's counsel took the position that the liability of the carrier would depend on the factual development of the case at trial and that, thus, the resolution of the instant question would require a special verdict from the jury.

of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein."

Westchester argues that as these exclusions and analogous provisions have been construed by the state and federal courts, it is not liable under a given set of facts for whatever judgment, if any, may be entered in this cause against Bazzani. At the same time, it acknowledges as an independent obligation under the policy its duty to represent Bazzani in these proceedings and to litigate the matter fully at Bazzani's behest.

While Bazzani does not concede the merit of Westchester's policy defense based on the business risk exclusions, it addresses no argument and offers no authority in refutation thereof. Instead, it objects to the very raising of any policy defense by the carrier at this stage of the proceedings, arguing that vis-à-vis Bazzani Westchester is estopped to deny its ultimate liability. In so arguing it relies squarely on the opinion of the Michigan Supreme Court[2] in *Meirthew v. Last,* 376 Mich. 33, 135 N.W.2d 353 (1965).

In *Meirthew* the plaintiff obtained a judgment by jury verdict against the defendant insured. To enforce her judgment, plaintiff proceeded in garnishment against the insurer. The latter resisted, denying liability under the policy in reliance on a "risks excluded" clause thereof. An attorney hired by the insurer represented the defendant through all stages of the proceedings, from the filing of the answer to the entry of the judgment; that same attorney represented the insurer in the garnishment proceeding.

At a point more than two years after the filing of the complaint and about seven months before trial, the insurer mailed to its insured a notice of reservation of rights, in which it expressed its intention to reserve to itself all defenses it might have against the insured under the policy of insurance and disclaimed any obligation to pay any final judgment which might be rendered in the principal action. Finally, while it expressed its willingness to carry on its defense of the insured, it informed him that he would be permitted to employ separate counsel at his own expense if he chose to do so.

The trial judge ruled that the insurer was estopped to deny its liability under the policy for the judgment entered against its insured. The Supreme Court affirmed, holding that the notice was legally insufficient both in substance and in timing to achieve its intended purpose.

The trial judge was outraged at the carrier's posture, and was moved to exclaim that its counsel wanted to have his cake and eat it, too. The remark brought into focus factors which both courts found to be significant:

"As the discourse appears by transcript, the judge's remark was stimulated by the garnishee's retention of control over Last's defense, and over pretrial settlement negotiations, thus denying to Last fair and timely opportunity to protect his rights (a) by a before-trial suit for declaration of rights against his insurer, or (b) independent negotiation of settlement with plaintiff at some figure less than the jury's substantial verdict, or (c) submission at trial of possibly available evidence that his motor vehicle was not being operated, at the time of this collision, in violation of the 'Risks Excluded' clause. To this we add that the record leaves no doubt that the garnishee, certainly by the time its answer for Last was filed in the principal suit, was possessed of all knowledge of facts which might tend to prove or disprove application of its presently pleaded 'Risks Excluded' clause." *Id.* at 36–37, 135 N.W.2d at 355.

Among the arguments Westchester erects in opposition to Bazzani's claim of estoppel is the contention that *Meirthew* is to be

---

**2.** Since the sole ground set forth in the Complaint for the Court's jurisdiction over this case is the diversity of the parties' citizenship, the Court is bound by the doctrine enunciated in *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to draw its rules of decision on all matters of substantive law from the law of Michigan, the forum state.

distinguished on its facts. In the Court's estimation there are no material distinctions between *Meirthew* and the instant case that would make further inquiry unnecessary. It is not critical or even significant that the dispute in *Meirthew* arose in the course of post-judgment proceedings, whereas here the question came to the fore on the day on which the matter had been set for trial. In any event, it has been made clear that Westchester would have been content to let the matter go to trial and litigate the question of its liability afterwards, possibly in a garnishment proceeding to be brought by the principal plaintiffs. Nor is it of consequence here that the attorney who had represented the insured in *Meirthew* both before and during trial was representing the carrier with respect to the garnishment. While that is a factor that makes the facts of *Meirthew* particularly egregious, it does not limit the precedential value of that case to such instances.[3] Upon consideration of the facts of this case, as they will be discussed *infra*, and of those of the *Meirthew* case, the Court is satisfied that there is sufficient similarity to merit consideration and discussion here of the principles declared there.

■ The seminal portion of the *Meirthew* opinion—the passage where the court enunciates the legal rule controlling its decision—is the following:

> "In no field of law is legal duty more rigidly enforced than in instances as at bar. The insurer must fulfill its policy-contracted obligation [to undertake the insured's defense] with utmost loyalty to its insured; not for the purpose of developing, secretly or otherwise, a policy defense. When a conflict of interest—even a mere possibility thereof—arises, the law suggests (if it does not require) that the insurer act promptly and openly, on peril of estoppel, preferably upon a record made in the pending case (if pending as here) with the court fully apprised of all necessary details; also that the insurer

act thus on time for arms' length actions which may protect the respective rights of both parties to the contract of insurance." *Id.* at 38, 135 N.W.2d at 355.

The Supreme Court of the State of Michigan has thus elaborated a rule of practice, coordinating the two distinct duties undertaken by the carrier in the typical policy of insurance, viz., the duty to represent and defend the insured and the duty to assume the burden of liabilities covered by the insurance contract. When the two duties come into conflict, or when the "mere possibility" of such conflict becomes evident, the insurer must notify its insured clearly and promptly of the existence and nature of the possible conflict. Failure to do so portends an estoppel to assert a policy defense, the result reached in *Meirthew*.

In response Westchester cites as a countervailing principle the notion that "the Doctrine of Estoppel cannot be so applied as to bring into existence an insurance contract not made by the parties or to create a liability contrary to the express provisions of the contract the parties did make." (Westchester's brief in support of its answer to Bazzani's motion for summary judgment, at p. 3.) In support of that proposition, it points to two cases of appreciable vintage: *Ruddock v. Detroit Life Ins. Co.*, 209 Mich. 638, 177 N.W. 242 (1920), and *Ames v. Auto Owners Ins. Co.*, 225 Mich. 44, 195 N.W. 686 (1923). The Court's investigation has led it to two additional cases that apply the principle, *Henne v. Glens Falls Ins. Co.*, 245 Mich. 378, 222 N.W. 731 (1929); *Munro v. Boston Ins. Co.*, 370 Mich. 604, 122 N.W.2d 654 (1963), and an annotation which discusses it at length, 1 A.L.R.3d 1139. The annotation reveals that while the rule on which Westchester relies is observed, at least nominally, in the majority of jurisdictions, it has been applied more and more restrictively and its reach has been more and more eroded. The four Michigan decisions cited above are illustrative of the

---

3. It is to be remembered that, by his admission expressed before the Court and opposing counsel in chambers, Mr. Ward's dilemma on the day of trial did not spring only from his con-

cern for his client's (*i. e.*, Bazzani's) welfare, but his concern was tempered by consideration of the long-standing association between his law firm and the carrier.

manner in which the rule has been taken to operate.

In *Ruddock, supra*, plaintiff's son, the insured, having died in the military service of his country, plaintiff notified the defendant insurance company of the loss. An agent of the company sent proof of loss forms and advised plaintiff to have an administrator appointed. Plaintiff followed the company's advice and also completed the forms. When, upon receiving the forms, the defendant first learned that plaintiff's son had died in military service, it refused to pay, invoking a pertinent exclusion in the policy. The court held that there was no estoppel and that, in any event, the question of estoppel has no place in such a case.

"To apply the doctrine of estoppel and waiver here would make this contract of insurance cover a loss it never covered by its terms, to create a liability not created by the contract and never assumed by the defendant under the terms of the policy. In other words, by invoking the doctrine of estoppel and waiver it is sought to bring into existence a contract not made by the parties, to create a liability contrary to the express provisions of the contract the parties did make." 209 Mich. at 654, 177 N.W. 242, 248.

*Ames, supra*, involved the plaintiff's attempt to recover the value of his automobile, which had been stolen. When it was notified of the claimed loss, the insurance company responded, "Up to the present time we have not received your application to cover this car and therefore cannot accept the same as a liability until we have definite proof that the application was made and put in the mail before the car was stolen." Later, after it had been determined that the plaintiff had in fact applied for the insurance and mailed the application before the occurrence of the loss, the defendant resisted payment of the claim on the grounds that its agent who had sold the insurance did not have the authority to deal with plaintiff in the manner that he had. The court, drawing on the authority of *Ruddock, supra*, held that the terms of its letter did not estop the insurer to raise its defense at the later time.

In *Henne, supra*, the insured requested of the insurer, through its local agent, that the coverage of the policy be transferred from one truck to another. The local agency subsequently informed the insured that the transfer had been effected. The insurer rejected the insured's claim for a loss involving the second truck on the grounds that the agent had exceeded the scope of its authority. The court held that since the insurer had not held the agency out as possessing the authority to make the change in question, it was not estopped to raise its defense to the claim.

Finally, in *Munro, supra*, the court held that the insured could not rely on failure to follow a regular industry practice of notifying the insured party of the imminent expiration of the policy and offering to renew to estop the insurer to deny liability under a policy which had expired five months before the occurrence of the loss.

In all these cases, then, in which the Michigan Supreme Court took the position that estoppel would not avail to broaden the coverage afforded by a policy, the estoppel that the insured sought to assert involved the occurrence of events and the performance of acts unrelated to the performance of duties expressly created by the contract; in none of these cases did the court face the problem of a possible clash arising out of the insurer's dual duties to defend and to pay.

In the end *Meirthew, supra*, is the most telling indication of how the doctrine of estoppel is to be applied in cases such as the one *sub judice*. It cannot be said that if the insurer had been able and allowed in *Meirthew* to establish the facts it alleged regarding the use to which the automobile was being put at the time of the loss, it would not have demonstrated that the terms of the policy did not cover the claim. The point is that the insurer was not allowed to present its case in this respect and that the effect of that estoppel was, in a sense, to broaden the coverage afforded by the policy. What the estoppel declared in

*Meirthew* did not do, however, was "to create a liability not created by the contract and never assumed by the defendant under the terms of the policy," *Ruddock, supra,* 209 Mich. at 654, 177 N.W. at 248, for the estoppel flowed out of the contractual duty to represent and defend the insured.

 Thus, *Meirthew* is not so much an insurance case as an agency case; as such, it brings into play the fundamental notion of agency law that the agent's loyalty to the principal in the performance of the agency functions must be absolutely undivided. In the time-honored formulation of Judge Cardozo, the fiduciary obligation imposed by the agency relationship demands of the agent "[n]ot honesty alone, but the punctilio of an honor the most sensitive, . . . ." *Meinhard v. Salmon,* 249 N.Y. 458 at 463, 164 N.E. 545 at 546 (1928).[4] Insistence on the undivided loyalty of the agent toward the principal becomes all the more imperative where, as here and as in *Meirthew,* the interests in the fair administration of justice and the appearance of justice enter into the balance.

> "The right to control the litigation in all of its aspects carries with it the correlative duty to exercise diligence, intelligence, good faith, honest and conscientious fidelity to the common interest of the parties. When the insurer undertakes the defense of the claim or suit, it acts as the agent of its assured in virtue of the contract of insurance between the parties, and when a conflict of interest arises between the insurer, as agent, and assured, as principal, the insurer's conduct will be subject to closer scrutiny than that of the ordinary agent, because of his adverse interest." *Traders & General Ins. Co. v. Rudco Oil & Gas Co.,* 129 F.2d 621 at 627 (10th Cir. 1942). (Citations omitted.)

It is, then, the opinion of this Court that *Meirthew* stands for the proposition that when there arises the substantial possibility that the carrier's duty to defend will come into conflict with its duty to pay under the policy, and when the carrier fails to notify its insured of the nature and existence of the possible conflict clearly and promptly, the duty to defend assumes the ascendancy and the carrier is estopped to deny its liability.

It remains for the Court, in applying the *Meirthew* rule to the facts of the instant case, to consider, first, whether notice of the possibility of conflict was given to Bazzani, and then, if it was given, whether it was sufficient and timely.

Attached as Exhibit A to Westchester's Answer to the Third-Party Complaint is a copy of a letter addressed to Mr. Allen Bazzani, apparently an executive officer of defendant Bazzani Building Company, from a Charles L. Lacey, who is identified as a claim supervisor in the employ of Crum & Forster Insurance Companies, of which Westchester is one.[5] The letter is dated July 1, 1977. It states that there are in the policy between the two parties certain exclusions applicable to the claim involved in the instant case. It sets out the language of the exclusions, *verbatim.* It goes on to state that the application of the exclusions may result in a denial by Crum & Forster of coverage in this case, a final determination of that question awaiting further site testing. Finally, while the company expressed its willingness to continue the active defense of the case, the writer urged Mr. Bazzani to retain his own legal counsel with respect to the questions raised in the letter.

Furthermore, Westchester alleges that about two weeks before July 1, 1977 "Mr. Bazzani was notified by the insurance com-

---

4. While the *Ruddock, Ames,* and *Henne* cases, *supra,* all involved agency questions, the agency relationships discussed in each of those cases involved the relationship between the insurer and its sales agent, not, as here, the relationship between the insured and the insurer. It is well established in this state that the sales representative is the agent of the insurer and not of the insured. *Ames, supra,* 225 Mich. at 48, 195 N.W. 686; *Henne, supra,* 245 Mich. at 390, 222 N.W. 731 (dissenting opinion).

5. Apparently Westchester was managing the case at this stage through its in-house staff rather than through retained counsel.

pany in the presence of his counsel . . that the contract of insurance might not cover the actions complained of in the plaintiff's Complaint because of certain exclusions. . . ." Westchester reiterates that allegation in its own motion for summary judgment and in its answer to Bazzani's motion for summary judgment. From the rest of the pleadings and from oral argument, the Court gathers that this earlier, mid-June notification was oral.

Bazzani has submitted the affidavit of Allen Bazzani, dated June 8, 1978. Therein Mr. Bazzani swears that he had never seen the letter in question before it was shown to him attached to Westchester's Answer. By way of explanation, Bazzani's counsel offered the further information that the letter was directed to an address that Mr. Bazzani had not occupied for five years.

By the time of oral argument, Westchester had submitted no counteraffidavits. At the close of the hearing, the Court afforded counsel five days' opportunity to submit such affidavits. What the Court received was an affidavit of Westchester's counsel in which he states:

> "that he has read the contents of the attached Motion for Summary Judgment by him subscribed, and knows on personal knowledge that the facts as set forth in same are true and would be admissable [sic] as evidence to establish the grounds as stated in same, and if sworn as a witness, can testify competently to the facts contained therein."

Unless it was the affiant, however, who communicated the oral notice to Mr. Bazzani on behalf of Westchester and unless the affiant has firsthand knowledge that Mr. Bazzani did receive the letter of July 1, 1977—inferences which this Court does not feel free to draw from the record before it—, the affidavit fails to meet the requirements of Rule 56(e)[6] of the Federal Rules of Civil Procedure and, consequently, does not avail to rebut Mr. Bazzani's affidavit. In addition, the Court finds significant the fact that the letter bears at the end the notation "Certified Mail—Return Receipt Requested" and that the receipt has not been produced by Westchester. Finally, it is to be noted that Westchester has yet to establish the authenticity of the letter, by affidavits or otherwise. The Court must conclude, then, that the July 1, 1977 letter did not reach Bazzani and, consequently, does not serve to satisfy even the threshold requirement of *Meirthew.*

That leaves for the Court's consideration the oral notification alleged by Westchester. Bazzani has not denied, either in Mr. Bazzani's affidavit or elsewhere, that it was given oral notice of Westchester's conditional disclaimer. On the other hand, the carrier's allegations are sketchy at best. What the Court is told is that Bazzani was notified that the exclusions existed, that they might operate to relieve Westchester of liability for a judgment that might be entered against it in this cause, and that at the time in question Mr. Bazzani was with his counsel.[7] The Court is not told who

---

**6.** "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so re-

spond, summary judgment, if appropriate, shall be entered against him."

**7.** Westchester would make much of the presence of Bazzani's legal counsel at the time of oral notification. Although the attorney is not identified by name, the Court observes that the Final Pre-Trial Order that was filed on June 23, 1977 following the final pretrial conference was signed by Kenneth B. Howard, Jr., as attorney for defendant Bazzani. Mr. Howard was at that time associated with the law firm of Dice, Sweeney & Sullivan. The Court has already reported that the firm's long association with Crum & Forster was one of the factors that precipitated the present inquiry. To the Court's mind, this element of special interest tends to attenuate appreciably the significance

communicated this message on behalf of Westchester, nor under what circumstances, nor with what degree of specificity. There are, then, surrounding this oral notification multiple issues of fact; the Court must determine whether they are issues of such material fact as to preclude under Rule 56(c)[8] entry of summary judgment.

The allegations in no way suggest that the contents of the oral communication were more precise and memorable than those of the subsequent letter. Accordingly, for the sole purpose of easing discussion, the Court will assume that the July 1, 1977 letter is authentic and that it tracks the earlier notification exactly.

Because it does not merely refer to exclusions in general but sets out the exact terms of the very exclusions Crum & Forster was invoking, the notice supplied here is more sufficient than that given in *Meirthew* to the insured; nonetheless, in the Court's estimation the sufficiency of the substantive content of the message conveyed to Bazzani is doubtful at best. The notice is directed to one who is, in terms of legal matters, a layman, and yet it is silent as to the meaning of the specific exclusions and as to how and why, in Crum & Forster's opinion, they would operate to make his claim fall outside the coverage provided under the policy. Moreover, since the notice did not go on to explain the nature of the conflict that Crum & Forster foresaw and the reason why Bazzani should not have felt content to let Westchester carry on the defense of the case, it is not enough that Bazzani was advised to seek independent legal counsel, particularly in view of the advanced stage that the proceedings had reached by that point. Finally, it is significant that the disclaimer was conditional, further investigation being necessary before a final determination would be made. There is no indication that a final

determination was in fact ever made and communicated to Bazzani or that the subsequent clarification implied in the notice was ever forthcoming. Under these circumstances, the Court is unable to conclude that the oral communication of mid-June 1977 was adequate to supply the notice required by *Meirthew, supra.*

■ While sufficiency *vel non* may well be a close question in this case, one that might require a fuller factual exposition before a definitive answer could be reached, there is no question whatsoever but that the notification alleged by Westchester was untimely.

Timeliness is a two-step question. The Court looks first to the earliest moment that the insurer should have become aware of the substantial possibility of conflict between its own interests and those of the insured, and then measures the time elapsing between that time and the time of notification.

Westchester argues in its brief in support of its answer to Bazzani's motion for summary judgment that "it was not until July 1, 1977 that [Westchester] was in a position to inform [Bazzani] that the contract of insurance in question might not cover the action complained of in the Plaintiff's Complaint . . . ." No elucidation of this position has been provided. If the argument is intended to suggest that the duty to notify does not arise until the question of conflict has practically ripened into a certainty, then it is clearly at odds with the precepts of *Meirthew, supra.* If it means that the carrier had no reason to suspect the possibility of conflict, then the argument fails to withstand analysis under the facts and is untenable.

Westchester must be held to an intimate awareness of the terms of the contracts it employs. It is with that awareness in mind

---

to be drawn from the presence of "Bazzani's" attorney. Recall that *Meirthew, supra,* 376 Mich. at 38, 135 N.W.2d at 356, called for "*arms' length action*" which may protect the respective rights of both parties to the contract of insurance." (Emphasis supplied.)

8. "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

that one must consider how Westchester should have read the Complaint. The gist of the principal plaintiffs' claim against Bazzani is contained in paragraph 5 of the Complaint:

"Bazzani Building Company was employed as the general contractor and as such failed to fulfill its contract and performed in a negligent and unworkmanlike manner and breached express and implied warranties in that it failed to follow specifications and good and customary building practice with respect to the construction and *furnishing of materials* and failed to properly and adequately supervise the work of its subcontractors." (Emphasis supplied.)

The gist of plaintiffs' injuries is set forth in paragraph 9:

"Subsequently because of the Defendants' . . . negligence, breach of contract and warranty the walls of said building cracked and the foundation, supports and building itself settled and had to be vacated and the business terminated thereat, causing loss to the Plaintiffs, as is more particularly hereinafter set forth."

It should have been apparent to Westchester from a reading of the allegations contained in these two paragraphs that plaintiffs could prove their case either by establishing Bazzani's negligence in the performance of the work or his use of defective materials. In the former event, Bazzani would be covered; in the latter, it appears, the business risk exclusions might operate to exclude the claim from coverage.

The Complaint was filed on July 31, 1975. A conditional disclaimer of liability was conveyed to Bazzani orally in the middle of June, 1977. While it is true that, owing to the pressure of other business in this Court, the matter did not come to trial until April of 1978, in June of 1977 discovery was completed, a settlement conference was held, the final pretrial conference was conducted and the final pretrial order was entered.

In other words, after June 21, 1977, the date of the final pretrial conference, the case was ready for trial, and proceedings were in abeyance awaiting an opening in the Court's calendar. The fact that fully nine months followed the oral notification is immaterial; the fact that over twenty-two months elapsed between the filing of the Complaint and the giving of notice, and that notification did not occur until practically the very end of pretrial proceedings and then only in oral form, is critical and dictates the conclusion that timely notice of the possibility of conflict was not provided.[9]

Clear and timely notice not having been supplied to the insured, its subsequent failure to object to the carrier's further defense of the action will not be held to preclude it from now asserting an estoppel against the carrier

Accordingly, the remaining issues of fact, as noted *supra*, are not material to the outcome of the instant motions.

Finally, the oral arguments dwelt for some time upon the question of whether Bazzani was prejudiced by Westchester's defense of the action. Jurisdictions have split on the question of whether prejudice in such cases will be presumed or not. *Compare Northwestern National Ins. Co. v. Corley*, 503 F.2d 224 (7th Cir. 1974) [Illinois law requires a showing of particularized prejudice], *with National Union Fire Ins. Co. of Pittsburgh v. Aetna Casualty & Surety Co.*, 127 U.S.App.D.C. 364, 384 F.2d 316 (1967) [Burden is on the carrier to demonstrate affirmatively that assumption of the defense was nonprejudicial], and *Pendleton v. Pan American Fire and Casualty Co.*, 317 F.2d 96 (10th Cir. 1963), *modified* 326 F.2d 760, *cert. denied* 375 U.S. 905, 84 S.Ct. 196, 11 L.Ed.2d 145 [By weight of authority, prejudice is to be presumed]. For purposes of the instant case, however, the question is settled by the specific holding of *Meirthew, supra*: "We hold the notice legally insufficient; also that it came too late to avoid *presumptive* prejudice of

---

**9.** This is not to decide that the carrier was bound to proceed to resolve this matter before filing the Answer to the principal Complaint or immediately thereafter, but only that the carrier in this case waited too long to preserve its rights.

[the insured's] rights and plaintiff's consequential rights." 376 Mich. at 38, 135 N.W.2d at 355. (Emphasis supplied). Recall that, in coincidental parallel with the facts of the instant case, the notice in *Meirthew* was sent two years after institution of the lawsuit and seven months before commencement of the trial.

The Court must nonetheless observe that the *Meirthew* court did find that the insured (and, consequentially, the plaintiff) had suffered actual prejudice of an articulable nature. To the extent that actual prejudice must be shown under the *Meirthew* standard, it is present here. At oral argument it came to light that in the autumn of 1975, after institution of this lawsuit, plaintiffs decided at the instance of the City of Farmington that the building had to be razed. All the parties were notified and given full opportunity to have the premises inspected by experts. The building was demolished in May, 1976 and the foundations were exhumed. As of July, 1977, presumably, no trace of the building was left. The representatives of Bazzani sent no one to examine the premises at the time of demolition and exhumation. It was thus deprived of valuable, perhaps critical first-hand evidence by which it could assess the possibility of recourse against the manufacturers or suppliers of the materials it had employed and which it could use in establishing its own case against the principal plaintiffs. And, of course, it cannot now be faulted for failing to look out for interests it did not at the time have reason to know to be at stake.

To this Court's mind, a presumption of prejudice flowing from a finding of untimeliness becomes all the more appropriate when one considers that, as a vital participant in the judicial proceedings (albeit a somewhat less than direct one), the carrier owes certain responsibilities not only to the insured but also to the opposing party and to the court. It is a well-known fact that the availability of an insurance fund to pay whatever judgment is ultimately entered is an important element in the management of a case, both with respect to the nature and extent of the discovery that is undertaken and with respect to the course of settlement discussions. As for the Court, it bears the responsibility of administering our system of justice in an orderly and expeditious manner. Those interests are not served where, as here, a conflict between the two parties to the contract of insurance is not brought to light until the very day of trial.[10] In light of the many diverse interests involved, this Court joins its voice with that of the Michigan Supreme Court in urging "that the insurer act promptly and openly, on peril of estoppel, preferably upon a record made in the pending case (if pending as here) with the court fully apprised of all necessary details; . ."

The third-party defendant Westchester Fire Insurance Company, having failed to notify the third-party plaintiff Bazzani Building Company and the Court in a clear and timely manner of certain policy defenses that it knew or should have known were available to it in the instant case, is estopped to assert those defenses.

Accordingly, Bazzani's motion for summary judgment is to be granted and Westchester's motion for summary judgment is to be denied. Judgment on the Third-Party

---

10. In the interests of justice, given both the nature of the dispute between Westchester and Bazzani and the delicate position of the attorney who was appearing as Bazzani's counsel, the Court could not let the trial go forward on the appointed day. As noted *supra*, the *Meirthew* court looked askance at the prospect of the carrier's conducting discovery with an eye to developing a policy defense; the problem is compounded in the instant case. At the point of trial, what had up till then been a mere possibility of conflict would have become the virtual certainty of conflict, for it is obvious that evidence would be adduced at trial bearing not only on the question of Bazzani's liability relative to plaintiffs but also on the question of Westchester's liability relative to Bazzani. Under those circumstances, it was preferable that the rights and liabilities of Bazzani and Westchester *inter se* be determined first in a separate proceeding, notwithstanding the delay in the trial of the principal action thus occasioned, than that one in such a position of adverse self-interest be permitted to play an influential and perhaps controlling role in shaping the course of the trial.

Complaint is to be entered in favor of the third-party plaintiff. The principal action will be set for imminent trial.

IT IS SO ORDERED.