# STATE OF MICHIGAN

# COURT OF APPEALS

HOME-OWNERS INSURANCE COMPANY,

      Plaintiff-Appellee,

v

STEVEN FOURMENT, KIMBERLY
FOURMENT, and HANOVER INSURANCE
COMPANY,

      Defendants,

and

NICOLE BALL,

      Defendant-Appellant.

UNPUBLISHED
February 21, 2017

No. 327751
Wayne Circuit Court
LC No. 14-009444-CK

HOME-OWNERS INSURANCE COMPANY,

      Plaintiff-Appellee,

v

STEVEN FOURMENT, KIMBERLY
FOURMENT, and NICOLE BALL,

      Defendants,

and

HANOVER INSURANCE COMPANY,

      Defendant-Appellant.

No. 330269
Wayne Circuit Court
LC No. 14-009444-CK

Before: JANSEN, P.J., and BECKERING and GADOLA, JJ.

PER CURIAM.

-1-

These consolidated appeals arise from the same lower court file. In Docket No. 327751, defendant Nicole Ball (Ball) appeals as of right an order granting summary disposition to plaintiff, Home-Owners Insurance Company (Home-Owners). In Docket No. 330269, defendant Hanover Insurance Company (Hanover) appeals by delayed leave granted[1] the same lower court order. We reverse and remand for entry of an order granting summary disposition to defendants and a judgment declaring that Home-Owners was required to defend and indemnify defendants Steven Fourment (Steven) and Kimberly Fourment (Kimberly) (collectively, the Fourments) in connection with an underlying dog bite action filed by Ball against the Fourments.

On appeal, Ball and Hanover, the insurance company for another defendant in the underlying action, argue that the trial court erred by granting Home-Owners's motion for summary disposition. Ball and Hanover contend that Home-Owners is estopped from asserting coverage defenses with respect to a homeowners insurance policy issued to the Fourments. We agree.

A trial court's decision regarding a motion for summary disposition is reviewed de novo. *Cannon Twp v Rockford Pub Sch*, 311 Mich App 403, 410; 875 NW2d 242 (2015). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint and is proper when there is no genuine issue regarding any material fact. *Id.* at 411. "When deciding a motion under MCR 2.116(C)(10), a trial court may consider affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, in the light most favorable to the nonmoving party." *Id.* "A genuine issue of material fact exists when, viewed in the light most favorable to the nonmoving party, reasonable minds could differ on an issue." *Id.* When the evidence fails to establish a genuine issue of fact, the moving party is entitled to judgment as a matter of law. *Id.*

"[W]hen an insurance company undertakes the defense of its insured, it has a duty to give reasonable notice to the insured that it is proceeding under a reservation of rights, or the insurance company will be estopped from denying its liability." *Kirschner v Process Design Assoc, Inc*, 459 Mich 587, 593; 592 NW2d 707 (1999) (emphasis omitted), citing *Meirthew v Last*, 376 Mich 33, 39; 135 NW2d 353 (1965). The doctrine of estoppel typically "will not be applied to broaden the coverage of a policy to protect the insured against risks that were not included in the policy or that were expressly excluded from the policy." *Kirschner*, 459 Mich at 594. Nonetheless, the application of estoppel may sometimes "bring within coverage risks not covered by the policy." *Id.*

> For example, in situations in which the insurance company has misrepresented the terms of the policy to the insured or defended the insured without reserving the right to deny coverage, courts have extended coverage beyond the terms of the policy when the inequity to the insurer as a result of the broadened coverage is outweighed by the inequity suffered by the insured. [*Id.* at 594-595.]

---

[1] See *Home Owners Ins Co v Fourment*, unpublished order of the Court of Appeals, entered January 8, 2016 (Docket No. 330269).

But the failure of the insurer, who is *not* a party to the underlying lawsuit, to notify an underlying tort claimant, who is *not* the insured, of a reservation of rights does not permit the use of estoppel to broaden coverage beyond the terms of the policy. *Id*. at 589, 595. Rather, an underlying tort claimant who is a judgment creditor of the insured may recover against the insurer only to the extent that the insured could recover against the insurer. See *id*. at 596.

In *Meirthew*, 376 Mich at 36-37, the insurer provided a defense to its insured but did not provide notice of its reservation of rights to its insured until more than two years after the underlying lawsuit was filed against the insured, and approximately seven months before the underlying judgment was entered. This deprived the insured of a fair and timely opportunity to seek a declaration of rights against the insurer or to attempt an independent negotiation of a settlement with the underlying plaintiff. *Id*. at 37. This Court held that the insurer's notice was insufficient because it was vague and "that it came too late to avoid presumptive prejudice of [the insured's] rights and [the underlying] plaintiff's consequential rights." *Id*. at 38.

Whether an insurer's notice of its reservation of rights is timely presents

a two-step question. The Court looks first to the earliest moment that the insurer should have become aware of the substantial possibility of conflict between its own interests and those of the insured, and then measures the time elapsing between that time and the time of notification. [*Cozzens v Bazzani Bldg Co*, 456 F Supp 192, 200 (ED Mich, 1978).[2]]

In *Fire Ins Exch v Fox*, 167 Mich App 710, 714; 423 NW2d 325 (1988), this Court noted that

only four months passed between the initiation of the underlying action and the date [that the insurer] sent its reservation of rights letter. We feel that four months is, as a matter of law, not an unreasonable length of time. We hold that issuance of the reservation of rights letter only four months after initiation of the litigation reasonably put [the insured] on notice that his claim might not be covered under his homeowner's insurance policy.

If an insurer defends an insured while knowing of facts that would permit avoidance of coverage but fails to provide reasonable notice to the insured, "actual prejudice is not required for the application of estoppel. Instead, a presumption of prejudice arises that, if unrebutted, will establish prejudice as a matter of law." *Smit v State Farm Mut Auto Ins Co*, 207 Mich App 674, 684; 525 NW2d 528 (1994), citing *Multi-States Transp, Inc v Mich Mut Ins Co*, 154 Mich App 549, 556; 398 NW2d 462 (1986). In *Multi-States Transp, Inc*, 154 Mich App at 557, the insurer defended its insured for approximately 2½ years without revealing a possible coverage defense despite knowing of that possible coverage defense since earlier in the case. In that circumstance, the insured's rights were presumptively prejudiced, the presumption had not been rebutted by the insurer, and the insurer was thus estopped from asserting the policy exclusion. *Id*.

---

[2] "Decisions from lower federal courts are not binding but may be considered persuasive." *Truel v City of Dearborn*, 291 Mich App 125, 136 n 3; 804 NW2d 744 (2010).

In the present case, Home-Owners was aware almost immediately after the dog bite incident of the facts on which Home-Owners now relies to assert its coverage defenses. Yet Home-Owners waited almost an entire year before providing any notice of its coverage defenses to its insureds, the Fourments. Home-Owners's claim notes reflect that it was notified of the dog bite incident on July 25, 2013, which was the day after the dog bite occurred. On July 25, 2013, a Home-Owners claims representative spoke to Kimberly on the phone and learned that the Fourments' dog bit a customer at a pet store. The claims representative was informed that the Fourments' dog was being used to demonstrate a product to the customer. On August 5, 2013, Home-Owners's claims representative met with Kimberly at the store and took her statement. Kimberly revealed that the dog was the Fourments' personal dog and that the Fourments took their dog to work at the pet store because they work long hours. These are the key facts on which Home-Owners now asserts the applicability of its coverage defenses, including the premises and business-pursuits exclusions. Yet Home-Owners did not assert its coverage defenses to the Fourments until nearly a year later, in its "coverage position letter" to the Fourments dated July 16, 2014, shortly after a case evaluation in the underlying action that resulted in an award against the Fourments.

In the nearly one year between the dog bite incident and the provision of notice in the July 16, 2014 letter, Home-Owners proceeded as if coverage was available without providing any notice that Home-Owners was reserving its rights. On August 1, 2013, Home-Owners sent a letter to Ball informing her that the Fourments had medical payments coverage available to Ball in the amount of $1,000. The letter did not assert any coverage defenses. Ball filed the underlying lawsuit against the Fourments and their employer, Westland Dog Food Co., Inc., on September 26, 2013. Home-Owners then provided a lawyer to represent the Fourments in the underlying case from September 2013 to July 2014 without issuing a reservation of rights letter. Indeed, as late as June 30, 2014, just before the underlying case evaluation, Home-Owners sent a letter to the Fourments informing them that the policy limits were $300,000 and that the Fourments may be personally liable for any judgment *in excess of* that amount. This letter did not assert any coverage defenses or the applicability of any exclusions in the insurance policy. It was not until after the issuance of the case evaluation award that Home-Owners suddenly informed the Fourments in a July 16, 2014 "coverage position letter" that no coverage was afforded under the policy and that Home-Owners would continue to provide a defense to the Fourments as a courtesy, but would not pay any judgment on their behalf. The letter informed the Fourments that if they chose to accept the case evaluation award, they were required to do so by July 28, 2014. On July 22, 2014, Home-Owners commenced this declaratory judgment action against the Fourments, Ball, and Hanover, asserting that no coverage was available under the policy. On August 7, 2014, Home-Owners sent the Fourments a "revised coverage position letter" adhering to its denial of coverage and quoting specific language from the insurance policy.

We conclude that Home-Owners failed to provide timely notice of its reservation of rights. Home-Owners's conduct in this case strikes us as unusually egregious. Home-Owners had all of the information it needed to assert its coverage defenses by either July 25, 2013, which was the day after the dog bite incident occurred, or certainly no later than August 5, 2013, when the Home-Owners claims representative met with Kimberly at the pet store and took her statement. Home-Owners knew that Ball was a customer of the pet store, that it was the

Fourments' personal dog that bit Ball, and that the dog was being used to demonstrate a product at the store. Home-Owners thus could have asserted the applicability of the business-pursuits or premises exclusions at any time in the almost one year that lapsed before Home-Owners finally issued its coverage position letter on July 16, 2014. In the meantime, Home-Owners had tendered a defense to the Fourments without ever suggesting that coverage was unavailable. On the contrary, Home-Owners strongly suggested that coverage was available by indicating that medical payments coverage would be afforded to Ball and by informing the Fourments before case evaluation that they would be liable for any judgment amount *in excess of* the policy limits.

Given Home-Owners's failure to provide reasonable notice of its reservation of rights to its insureds, the Fourments, in a timely manner, a presumption of prejudice arises that, if unrebutted, establishes prejudice as a matter of law. See *Smit*, 207 Mich App at 684; *Multi-States Transp, Inc*, 154 Mich App at 556. See also *Meirthew*, 376 Mich at 38 (stating that the insurer's notice "came too late to avoid *presumptive* prejudice of [the insured's] rights") (emphasis added). Home-Owners has failed to provide any evidence to rebut the presumption of prejudice.

Even if prejudice is not presumed, we would conclude that there was unrebutted evidence that the Fourments were prejudiced. Home-Owners waited nearly a year to provide notice of its coverage position, which was *after* case evaluation was held and an award was rendered against the Fourments. The Fourments were thus placed in a position of having to either accept the case evaluation award that was rendered when insurance coverage was assumed to exist—an award that the Fourments may well have been unable to afford to pay without insurance coverage—or else face the risk of sanctions for rejecting the award following the ultimate judgment against them.[3] If Home-Owners had provided notice of its coverage position *before* case evaluation, this likely would have resulted in a lesser case evaluation award against the Fourments, which the Fourments may well have been more willing and able to accept.[4] It is also reasonable to conclude that earlier notice of Home-Owners's coverage position would have influenced underlying settlement discussions, because the Fourments would have had a greater incentive to settle before the possible rendering of a large case evaluation award that exposed them to the risk of sanctions.

> It is a well-known fact that the availability of an insurance fund to pay whatever judgment is ultimately entered is an important element in the management of a case, both with respect to the nature and extent of the discovery that is undertaken

---

[3] In fact, the latter event is precisely what happened. After a jury verdict was rendered against the Fourments, case evaluation sanctions were imposed on them for rejecting the case evaluation award.

[4] A case evaluation panel may consider factors similar to those considered in settlement negotiations, including insurance policy limits. See *Vermilya v Carter Crompton Site Dev Contractors, Inc*, 201 Mich App 467, 473; 506 NW2d 580 (1993); MCR 2.403(J)(3) ("Information on settlement negotiations not protected under MCR 2.412 and applicable insurance policy limits shall be disclosed at the request of the case evaluation panel.").

and with respect to the course of settlement discussions. [*Multi-States Transp, Inc*, 154 Mich App at 556, quoting *Cozzens*, 456 F Supp at 202 (quotation marks omitted).]

See also *Meirthew*, 376 Mich at 37 (noting that the insurer's untimely notice deprived the insured of an opportunity to seek an independent settlement negotiation with the underlying plaintiff). Therefore, even if prejudice is not presumed, we would conclude that it is clear in this case that the Fourments were prejudiced by Home-Owners's untimely notice of its coverage position, such that Home-Owners is now estopped from asserting its coverage defenses.

The trial court's reasoning did not accurately reflect the estoppel theory being asserted in this case. The trial court correctly noted that the doctrine of estoppel may not be used to expand coverage beyond the terms of the policy when an insurer fails to notify an injured person who is not an insured that the insurer is reserving its rights. See *Kirschner*, 459 Mich at 589, 595 (an insurer's failure to notify an underlying tort claimant, who is *not* the insured, of a reservation of rights does not permit the use of estoppel to broaden coverage beyond the terms of the policy). But defendants in this case did not assert that estoppel applied because of Home-Owners's failure to notify the underlying tort claimant, Ball, of the reservation of rights. On the contrary, estoppel here was asserted on the basis of Home-Owners's failure to notify its own insureds, the Fourments, of the reservation of rights. This trial court's reasoning thus reflects an apparent misunderstanding of the nature of the estoppel theory being asserted in this case.

Because Ball is a judgment creditor of the Fourments, she has the right to recover against Home-Owners to the same extent that the Fourments could recover. See *Kirschner*, 459 Mich at 596; *Meirthew*, 376 Mich at 40; *Smit*, 207 Mich App at 683. Contrary to Home-Owners's argument on appeal, Ball is thus permitted to assert estoppel against Home-Owners to the same extent that the Fourments could assert that doctrine. Accordingly, we conclude that the doctrine of estoppel applies to bar Home-Owners from asserting its coverage defenses. It is therefore unnecessary to address the additional issues raised on appeal concerning the merits of whether the asserted policy exclusions apply.

Finally, we note that the fact that Home-Owners provided the attorney for the Fourments in the underlying action and later asserted that no coverage was afforded under the policy raises ethical concerns regarding the attorney's duties to the Fourments. " '[N]o attorney-client relationship exists between an insurance company and the attorney representing the insurance company's insured. The attorney's sole loyalty and duty is owed to the client, not to the insurer.' " *Kirschner*, 459 Mich at 598 (citation omitted). Although the attorney did not have an attorney-client relationship with the insurance company, we cannot overlook the fact that Home-Owners provided the attorney for the Fourments and that the insurance company's position may affect the attorney's loyalty to the insured. In the typical situation, an attorney provided by an insurance company would face no ethical conflict because the interests of the insurance company and the interests of the insured would be aligned. However, in this case, the attorney provided by Home-Owners initially represented the Fourments with the understanding that the incident was covered under the insurance policy. This understanding remained until after the case evaluation award was issued. Then, the same attorney continued to represent the Fourments even after Home-Owners took the position that it would not provide coverage. The interests of the insured and the interests of the insurer were no longer aligned when Home-Owners

determined that the incident was not covered by the insurance policy. It is difficult to determine whether the attorney was acting to further the interests of the Fourments throughout the underlying action in light of the fact that the insurance company, the entity that provided the attorney, took the position during the case that coverage was not afforded under the policy. Therefore, we conclude that Home-Owners's position that it permitted the attorney to represent the Fourments as a "courtesy" is specious and raises ethical concerns regarding the loyalty of the attorney.

Reversed and remanded for entry of an order granting summary disposition to defendants pursuant to MCR 2.116(I)(2) and a judgment declaring that Home-Owners was required to defend and indemnify the Fourments in connection with the underlying dog bite action filed by Ball against the Fourments. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Michael F. Gadola