Donald R. L. SNODGRASS,
Appellant-Plaintiff,

v.

Danny R. BAIZE, Executor of the Estate of Oscar A. C. Baize, Deceased, Judgment Defendant,

Penn Mutual Fire Insurance Company, Appellee-Garnishee Defendant.

No. 2–378A105.

Court of Appeals of Indiana, Second District.

May 29, 1980.

Rehearing Denied Aug. 14, 1980.

---

Frederick J. Graf, Martz, Beattey, Hind & Wallace, Joseph R. Woods, McCausland & Woods, Dan L. Clayton, Pope, Pope & Clayton, Indianapolis, for appellant-plaintiff.

R. Stanley Lawton, William L. Skees, Jr., Ice, Miller, Donadio & Ryan, Indianapolis, for Penn Mutual Fire Ins. Co.

John T. Manning, Wausau, Wis., for Danny R. Baize, Executor of the Estate of Oscar A. C. Baize, Deceased.

SULLIVAN, Judge.

Donald Snodgrass appeals from a negative order in a proceeding supplemental, wherein he sought to obtain proceeds under a homeowners liability insurance policy issued by Penn Mutual Insurance Company to the decedent, the judgment defendant's predecessor. We affirm.

Plaintiff, by amended complaint, filed a personal injury action against judgment defendant, Danny Baize as executor of the estate of Oscar Baize, alleging alternatively that the decedent shot plaintiff intentionally or negligently.[1] Judgment defendant did not deny the shooting, but, rather, alleged "affirmative defenses" of insanity, self-defense and "legally sufficient provocation". The jury returned a verdict in plaintiff's favor on the negligence count. Counsel for Penn Mutual Fire Insurance Company, the decedent's insurer, appeared on behalf of Baize, but, upon perceiving a potential conflict of interest, though not conceding policy coverage, withdrew prior to trial. Baize's personal attorney defended the original action and the insurance company paid his fee.

Snodgrass then filed a motion for proceedings supplemental against Baize and

---

1. Between filing of the original and amended complaints, Oscar Baize died of unrelated causes. His executor was substituted as defendant.

the insurer. Penn Mutual defended on the ground that the injury was "expected or intended from the standpoint of the insured" and, thus, excluded from coverage. The trial court agreed and found for the insurance company.

Plaintiff assigns numerous errors, but the format of his brief renders impossible a clear understanding of his arguments. With great difficulty, we restate the issues we perceive to be before us:

(1) Are the parties to the proceeding supplemental bound by the jury verdict in the underlying lawsuit under the doctrines of res judicata, collateral estoppel, stare decisis, or equitable estoppel?

(2) Was the order in this proceeding contrary to law?

## I.

As stated in *State v. Speidel* (2d Dist. 1979) Ind.App., 392 N.E.2d 1172, 1174–75 (pending on rehearing), res judicata includes both claim preclusion and collateral estoppel (also known as issue preclusion). Claim preclusion involves "a prior adjudication resulting in a final judgment on the merits . . . which acts as a complete bar to a subsequent action on the same claim between the same parties or those in privity with them." *Id.* The original proceeding was a civil suit to collect damages for Baize's tortious conduct, whether intentional or negligent. The instant proceeding is a claim to obtain an asset in the hands of a third party to satisfy the judgment rendered upon the first claim. Therefore, even though both cases involve the same facts, the respective "claims" are not the same. Collateral estoppel involves a prior adjudication of a particular issue which is binding on the parties and their privies in a later, different proceeding. *Id.* at 1175. Penn Mutual was not a party to the original lawsuit. Therefore, any application of collateral estoppel must be based on privity. An indemnitor is generally considered to be in privity with his indemnitee. *Cowan v. Insurance Company of North America* (1974) 22 Ill.App.3d 883, 890, 318 N.E.2d 315, 321; *see Hoosier Casualty Co. v. Miers* (1940) 217 Ind. 400, 403–04, 27 N.E.2d 342, 344. Accordingly, Penn Mutual must be considered a privy of Oscar Baize and, by succession, of his estate.

Because collateral estoppel is facially applicable, we must consider the purpose of the doctrine. As stated in *Farm Bureau Mutual Automobile Insurance Co. v. Hammer* (4th Cir. 1949) 177 F.2d 793, 799:

"The underlying purpose of the doctrine is to obviate the delay and expense of two trials upon the same issue—one by the injured party against the indemnitee and the other by the indemnitee, or the injured party against the indemnitor. This is possible because it is assumed that the interests of the parties to the contract of indemnity in opposing the injured person's claim are identical; and it is accomplished by giving the indemnitor an opportunity to appear in the first suit on behalf of the indemnitee so that everything that can be offered in exculpation of the indemnitee by either party to the indemnity contract may be presented."

*See also Hoosier Casualty Co. v. Miers, supra,* 27 N.E.2d 342 (holding that an indemnitor may be bound if it has notice of litigation and an opportunity to control the proceedings).

In the instant case, the interests of the insured and the insurer were in partial conflict. The insured would benefit, to the extent of policy limits, from a finding of negligence which arguably was within the coverage of the policy. The insurer would favor a finding of an intentional tort which the policy did not cover. *See Farm Bureau Mutual Automobile Insurance Co. v. Hammer, supra.* In such a situation the insurer should not defend, but, rather, as here, should reimburse the insured's personal counsel. *All-Star Insurance Corp. v. Steel Bar, Inc.* (N.D.Ind.1971) 324 F.Supp. 160, 165. Because there was a partial conflict of interest and because Penn Mutual could not rightfully have controlled Baize's defense, the rationale underlying the application of collateral estoppel does not apply.

Snodgrass relies on *Miller v. United States Fidelity & Casualty Co.* (1935) 291 Mass. 445, 197 N.E. 75. In *Miller* the insurer refused to defend the original tort suit which was based solely on allegations of negligence. The court held:

"Where an action against the insured is ostensibly within the terms of the policy, the insurer, whether it assumes the defense or refuses to assume it, is bound by the result of that action as to all matters therein decided which are material to recovery by the insured in an action on the policy." *Id.* at 448, 197 N.E. at 77.

*Hammer* is the leading case in opposition to *Miller, supra. Centennial Insurance Co. v. Miller* (E.D.Cal.1967) 264 F.Supp. 431, 433. We believe *Hammer* is the better-reasoned case and adopt its approach. Therefore, Penn Mutual is not bound by the civil verdict on the negligence count.

Furthermore, one Indiana case conflicts with the Massachusetts *Miller* decision insofar as the liability of an insurer who assumes the insured's defense is concerned. In *State Farm Mutual Automobile Insurance Co. v. Phillips* (1936) 210 Ind. 561, 568, 2 N.E.2d 989, 992, the court held: "[N]o estoppel arises where, although defending the suit against the insured, it insists on its nonliability under the policy, and its defense of the suit is merely to protect itself and comply with its agreement."

The complaint in the instant case was filed January 9, 1975. In a letter dated February 21, 1975, counsel for Penn Mutual addressed the insured's personal attorney:

"As you are undoubtedly aware, the first paragraph of the complaint deals with alleged malicious assault and would clearly not be within any of the provisions of the policy coverage for either defense or payment. The second paragraph alleges negligence and would therefore be within the terms of the coverage as set forth in the allegations. However, as we understand the facts, the acts here were intentional, and it is my understanding that there is an exclusion in the policy for intentional acts.

.     .     .     .     .

Therefore we may have a situation in which the company is obligated to defend for the moment at least, but would not ultimately be obligated to pay any judgment that might be rendered if the facts disclose that the incident came within an exclusion of the coverage. Penn Mutual Fire has no intention of waiving any of the exclusions in its policy or any of the limitations that are contained in the policy, and therefore in our participation in the defense of this case we are doing so with that understanding.   .    .    .

I am writing this letter to you rather than to the insured directly as we normally do because I understand that you are representing him in respect to all the matters pertaining to this lawsuit and have already entered your appearance for him in the case. In view of the fact that it is likely that there will not be any ultimate obligation on the carrier to pay any judgment, I feel that it is desirable for you to have a most substantial participation in all of the judgment decisions that are made in respect to the defense of this case. Subject to the above limitations, I am entering my appearance .    .    . ."

This letter was followed by an additional letter dated December 9, 1975, which stated:

"In thinking over this particular lawsuit, it appears to us that there may be some conflicts between what the insurance carrier would want to have accomplished and what you might want to accomplish for the estate. From that standpoint, we are willing to recommend to the carrier that we be authorized to withdraw from the case entirely, and that you handle it on your own and that you be paid by the company a reasonable charge for the time that you spend on the case from this time forward. We would likewise want an agreement that if there should be a judgment against the estate on [the negligent injury count] that the estate would not consider this to be res judicata in any way, nor would it be treated as collateral estoppel or as any

sort of a decision precluding complete review, and that the carrier would be permitted to defend any claim under proceedings supplemental or execution procedures and would be entitled in that defense to litigate that question as to whether or not the plaintiff in the case was injured as the result of a negligent conduct or as the result of intentional conduct."

The insured's attorney assented to these terms.

Snodgrass cites *Cozzens v. Bazzini Building Co.* (E.D.Mich.1978) 456 F.Supp. 192, for the proposition that the insurer's intentions were communicated too late for the notice to be effective. In *Cozzens*, the court stated: "When [the duty to defend and an insurer's liability to pay] come into conflict, or when the 'mere possibility' of such conflict becomes evident, the insurer must notify its insured clearly and promptly of the existence and nature of the possible conflict. Failure to do so portends an estoppel to assert a policy defense . . . ." *Id.* at 196. The court then examined the notice given by the insurer to the insured. It found that the oral statement did not explain the meaning of the policy exclusion and how it might cause non-coverage, the nature of the conflict, or why the insured should retain his own attorney. Furthermore, the notice was given at an advanced stage of the proceeding and was conditional, pending a final determination that was never communicated to the insured. The court held that the notice was not sufficient.

The initial letter in the instant case, although somewhat tentative, was sufficient to inform the insured's attorney of the insurer's essential position. The second letter simply crystallized the matter. While a shorter interval between the two letters would have been preferable, the law firm's and insurer's actions were, in all other respects, a model to be followed in such situations. *See Maryland Casualty Co. v. Peppers* (1976) 64 Ill.2d 187, 355 N.E.2d 24. We are unable to conclude that the insured was at any time prejudiced by the insurer's actions.

■ Snodgrass also contends that Penn Mutual should be bound by equitable estoppel because it gave no notice of disclaimer or reservation of rights to him. Indiana requires only that such notice be given to the insured. *See State Farm Mutual Automobile Insurance Co. v. Phillips, supra,* 2 N.E.2d 989. This appears to be the general rule. *See* 44 Am.Jur.2d *Insurance* § 1556 (1969). Further, equitable estoppel arguments are generally presented in cases in which the insurer has defended its insured. As noted above, Penn Mutual, although fulfilling its duty to defend by paying the judgment defendant's private attorney, did not by its own counsel control the defense of the action.

■ Having determined that claim preclusion and collateral estoppel are inapplicable, we turn to the question whether the civil verdict should bind Penn Mutual on the theory of stare decisis. In support of his position Snodgrass cites *Vernon Fire & Casualty Insurance Co. v. Matney* (1st Dist. 1976) Ind.App., 351 N.E.2d 60. *Matney* involved the failure of an insurer to intervene in a suit by its insured against an uninsured motorist. Penn Mutual could not have intervened in the action between Snodgrass and Baize because of the potential prejudice to Baize. *See Miller v. Alvey* (1965) 246 Ind. 560, 568, 207 N.E.2d 633, 637. Therefore, *Matney* is inapposite.

Snodgrass argues that Penn Mutual is estopped from asserting any policy defenses because the law firm that represented the insurance company in the garnishment action also entered an appearance and participated in the pre-trial defense of Baize. As authority for that proposition, Snodgrass relies on *Parsons v. Continental National American Group* (1976) 113 Ariz. 223, 550 P.2d 94. In *Parsons* the attorney obtained confidential information detrimental to the insured by reason of the attorney-client relationship, defended the suit against the insured, and represented the insurance company in the subsequent garnishment action.

■ Prior to withdrawing as counsel, the law firm in the case at bar received a

signed statement taken from Oscar Baize by an investigator employed by the insurer. This document, recounting the decedent's version of the incident, was admitted into evidence in the proceeding supplemental. Because the firm obtained the statement from the insurer or its agent rather than from the client, the statement was not obtained by means of the attorney-client relationship between it and decedent; and because it withdrew from the case before trial, we find no breach of the attorney-client relationship which would estop the insurance company from asserting any policy defenses.

Estoppel rests upon a detrimental change of position induced by the acts or conduct of the party estopped. *Hargis v. United Farm Bureau Mutual Insurance Co.* (1st Dist. 1979) Ind.App., 388 N.E.2d 1175. Decedent here made no change in position, detrimental or otherwise, as a result of his statement to the insurer's investigator; nor did the estate; nor did Snodgrass. We fail therefore to see how estoppel in the pure sense arises in this case at all.

We need not discuss another possible aspect of the statement made by the decedent to his insurer's investigator, i. e., whether such statement is a privileged communication and therefore inadmissible. Such privilege would be personal to the decedent or his representative and may not be claimed by Snodgrass, the original claimant against decedent. *In re Estate of Beck v. Campbell* (1968) 143 Ind.App. 291, 240 N.E.2d 88. Nor is the privilege claimed as a reason for excluding the statement.

We do not go so far as those Federal Courts which hold as did the U.S. District Court for the District of Columbia:

"[A] communication received by a liability insurance company from one of its insured concerning a matter covered by the insurance policy is not a privileged communication". *Gottlieb v. Bresler* (1959) 24 F.R.D. 371, 372. *See also Jackson v. Kroblin Refrigerated Xpress, Inc.* (N.D.W.Va.) (1970) 49 F.R.D. 134.

There may be circumstances under which such communication should have the privilege protection. The policy considerations for recognition of the privilege are discussed eloquently and in depth in *State ex rel. Cain v. Barker* (Mo.1976) 540 S.W.2d 50.

There is a possible implication in *Parsons, supra,* that obtaining a statement from the insured tending to negative policy coverage estops the insurer from asserting that policy defense. Such implication is now rejected. To render such statement inadmissible upon grounds that it was obtained in breach of a fiduciary duty or that subsequent events render its use against the insured inequitable or unfair is quite a different thing than to say that the policy defense is lost. To so hold would be somewhat analogous to holding that because the State obtained an inculpatory statement, not only must the statement be excluded but all other evidence of guilt must also be excluded—and that the State must discharge the defendant from custody, without the possibility of refiling the charge.

In any event, to preclude a valid policy defense by doctrine of estoppel because insured made a statement to the insurer is unnecessary and unwarranted. It would compel the insurer to avoid interviewing the insured in the initial investigation stage, except as a last resort, in the fear that if the exclusion is found to exist through the insured's own statement, the insurer forever loses the right to assert that defense.

If "estoppel" or "waiver" (*see Hargis v. United Farm Bureau Mutual Insurance Co., supra* ) is applicable at all to such situations, it must be to statements obtained after discovery of the conflict of interest *and* without having advised the insured of such conflict. If the statement is obtained during the necessary initial investigation process and only thereafter is the conflict discovered, and the insured notified, then such statement may be used. Under such circumstances, the insurer acts wholly in good faith and should not be deprived of the opportunity to assert the truth—particularly when that truth may be obtainable

only, or most naturally and reasonably, through the insured's recitation of the occurrence giving rise to the original claim against him.

At one point in his brief, Snodgrass urges that Penn Mutual should have sought a declaratory judgment to determine its obligations. Although the dilemma and controversy posed might have been alleviated by such a suit, it has been held that a declaratory judgment is not appropriate if the question involved would be, as here, fully resolved in the tort action. *Brohawn v. Transamerica Insurance Co.* (1975) 276 Md. 396, 347 A.2d 842. *See also Thompson v. Medical Licensing Board* (2d Dist. 1979) Ind. App., 389 N.E.2d 43, 50.

For the reasons given above, Penn Mutual was entitled to litigate policy coverage at the proceeding supplemental hearing.

## II.

Snodgrass asserts that none of the evidence upon which the trial court based its findings of fact was admissible. If any of the evidence was admissible and would support the findings, the judgment of the trial court must be affirmed.

In response to a request for admissions, the estate admitted that Oscar Baize had been convicted of aggravated assault and battery in connection with the occurrence. Snodgrass did not object at trial when the admission was offered into evidence. Although we note that a quite different question would have been presented had Snodgrass objected on the basis that a criminal conviction is inadmissible in a civil proceeding, no error has been preserved upon appeal, and the admission was proper to be considered by the trial court. *Charlie Stuart Oldsmobile Inc. v. Smith* (2nd Dist. 1977) Ind.App., 369 N.E.2d 947.

Aggravated assault and battery carries with it an element of "intentional" or "knowing" conduct as opposed to mere negligence. I.C. 35–13–3–1 (Burns Code

Ed. 1975).[2] In this connection it must be observed that, at the proceeding supplemental hearing, Snodgrass had the burden of proving that the conduct was *not* intentional. Thus, the evidence, while not conclusive as a matter of law, is sufficient to support the ultimate conclusion of the trial court. Therefore, we will not consider the other evidence which Snodgrass contends was erroneously admitted. The decision of the trial court is affirmed.

MILLER, J., concurs.

SHIELDS, J., concurs in result.

2. Repealed by Acts 1976, P.L. 148, § 24, effective Oct. 1, 1977. For saving clause, see Acts 1977, P.L. 340, § 150.