**In the Matter of A SEARCH WARRANT For the COMMISSIONER OF LABOR TO INSPECT the PREMISES OF FRANK FOUNDRIES CORPORATION, LOCATED AT 1324 SOUTH BROTHERTON STREET, MUNCIE, DELAWARE COUNTY, Indiana.**

No. 4–382A63.

Court of Appeals of Indiana, Fourth District.

April 28, 1983.

Rehearing Denied June 3, 1983.

Linley E. Pearson, Atty. Gen., James F. Schmidt, Deputy Atty. Gen., Indianapolis, for appellant.

Michael D. Freeborn, Johnnine Brown Hazard, Margaret S. Garvey, Rooks, Pitts, Fullager & Poust, Chicago, Ill., Frank E. Gilkison, William V. Hughes, White, Beasley, Gilkison, Retherford & Buckles, Muncie, for appellee.

CONOVER, Judge.

The State of Indiana appeals a decision of the Delaware Superior Court, Judge Robert L. Barnet, quashing a search warrant issued

to the Commissioner of Labor to search Frank Foundries Corporation (Frank Foundries), for possible Indiana Occupational Safety and Health Act (IOSHA) violations.

ISSUES

1. Did the trial court erroneously hold the Commissioner of Labor's inspection program is a rule and must be promulgated pursuant to the Indiana Administrative Procedure Act (IAPA)?

2. Was probable cause shown by the affidavits submitted?

3. Was the entire matter res judicata?

FACTS

On June 29, 1981, IOSHA inspector Harris Crowder attempted to search Frank Foundries Corporation in Muncie, Indiana, pursuant to a search warrant issued by the Delaware Superior Court. Probable cause affidavits were submitted by Crowder and Jack H. Faulkner,[1] Director of Building and Factory Inspection, IOSHA. Each affidavit sought to establish probable cause by re-

liance upon the IOSHA Target Industries Program.

Frank Foundries denied entry to the IOSHA inspectors on July 7, 1981. On August 6, 1981, the Commissioner of Labor filed a petition for an order to Frank Foundries to appear and show cause. Frank Foundries responded with a motion to quash the search warrant, which was granted.

DISCUSSION & DECISION

*I. Rule Making—Internal Policy*

■ The Commissioner argues the trial court erred in holding the Target Industries Program was a "rule" and should have been promulgated under Ind.Code 4–22–2–2. He argues the Program is an internal policy of the department and therefore is excluded from the definition of "rule." Ind.Code 4–22–2–3 defines "rule" as follows:

The word "rule" means any rule, regulation, standard, classification, procedure, or requirement of any agency, designed to have or having the effect of law or interpreting, supplementing or imple-

---

1. The following excerpt from Faulkner's affidavit shows how target industries were selected:

3. That this inspection is a regularly scheduled general inspection by IOSHA pursuant to IC 22–8–1.1–23.1 undertaken as a part of the Target Industries Program, which program is used in selecting places of employment in Indiana for general scheduled safety inspections to assure that these places of employment are in compliance with the act and the standards promulgated under it.

4. That under said program IOSHA conducts 95 percent of all its general scheduled safety inspections, except for those conducted at construction sites.

5. That said program includes 167 industries from the Standard Industrial Classification (SIC) Manual, which manual includes all establishments by the type of economic activity in which they are primarily engaged in order to facilitate the gathering and analysis of statistical data and promote its uniformity and comparability.

6. That within these 167 industries are found approximately 3100 of Indiana's total of approximately 97,000 private sector employers.

7. That these 167 industries are included in said program because they have high hazards (in other words, industries with more than 3.7 lost workday injuries per 100 employees and with more than three lost workday cases per establishment) as determined by annual

statistical surveys by the Department of Statistics, Indiana Division of Labor, and the Bureau of Labor Statistics, United States Department of Labor. It is IOSHA's intent to concentrate enforcement activity in those industries which have the highest hazards in order to attempt to carry out the goal of reducing occupational accidents and illnesses.

8. That by the terms of the program a period of at least one year must pass between general scheduled inspection of any one establishment within any of these industries.

9. That the selection of individual employers for inspection is made by proceeding, at each time an inspection is assigned, through the list of 167 high hazard industries in the order of their statistically determined hazards starting with the most hazardous, and finding the first available inspection located in the geographic area the inspector being assigned an inspection works.

10. That the above stated business entity was selected for inspection because it is in a high hazard industry—Standard Industrial Classification number 3321 which includes establishments engaged in manufacturing gray iron castings, including cast iron pressure and soil pipes and fittings—and because it is the largest employer in SIC 3321 located in the inspector's geographic work area not inspected in the last year.

menting any statute, but does not include resolutions or directions of any agency relating solely to internal policy, internal agency organization or internal procedure which do not have the force of law and does not include "administrative adjudication." [2]

Frank Foundries posits the Program "classifies" industries and is therefore a rule. It also argues the Program is not an internal policy and has the force of law because it often serves as the sole basis for creating probable cause to obtain a search warrant.

While the very nature of the Target Industries Program is to "classify" industries according to set "standards", the program is not a "rule" because it is an internal policy or procedure not having the force of law.

Arguments similar to those raised here by Frank Foundries were recently addressed by the United States Court of Appeals for the Ninth Circuit. In *In re Stoddard Lumber Co.* (9th Cir.1980) 627 F.2d 984, the court held:

> Stoddard contends that the Secretary's General Schedule Inspection Selection Process is *per se* unreasonable because it is a "rule" that has not been promulgated in accordance with the formal rulemaking procedures of 5 U.S.C. § 553. . . . However, by its own terms, the notice and comment requirements of 5 U.S.C. § 553 do not apply "to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice . . . ." 5 U.S.C. § 553(b)(3)(A).
>
> . . . .
>
> Be that as it may, we have no difficulty in holding that neither the General Schedule Inspection Selection Process, nor OSHA Instruction CPL 2.25, nor the 1979 OSHA Field Operations Manual and Industrial Hygiene Field Operations Manual, Chap. IV, each of which is referred to by appellant in his brief, is subject to notice and comment procedure. None was promulgated as a legislative rule by the Secretary. Also none has a suffi-

ciently "substantial impact" to justify such procedure. The program by which the choice of installations to inspect is made remains subject to control by the courts exercising their responsibilities under the criteria of the Fourth Amendment as explicated in *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). Although the ability of courts to substitute their judgment for that of an administrator will not in all instances excuse non-compliance with notice and comment procedure, in this case the experience of courts in determining the reasonableness of searches pursuant to warrants constitutes a source of expertise very likely not inferior to that of the Secretary. The absence of notice and comment procedures under these circumstances very likely will not prejudice owners. Our conclusion remains the same without regard to whether the Secretary's pronouncements be regarded as interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice.

*Id.* at 986–88 (footnote omitted). The Target Industries Program is not a "rule" subject to promulgation. We exclude it from the "rule" definition specifically because it is an internal policy or procedure not having the force of law.

 The Target Industries Program is a plan by which the Commissioner of Labor selects which manufacturers to inspect for OSHA violations. It is an internal policy because it is used solely within the department when selecting inspection sites. Furthermore, it does not have the force of law. The trial court, as always, has the authority to grant or deny the search warrant. The standard to be used by the court when determining if probable cause exists, was set out by the United States Supreme Court in *Marshall v. Barlow's, Inc.,* (1978) 436 U.S. 301, 319, 98 S.Ct. 1816, 1824, 56 L.Ed.2d 305:

> For purposes of an administrative search such as this, probable cause justifying the

**2.** While the Commissioner argues in the alternative this program is an administrative adjudication, we find no merit in this argument. *See*

*Indiana Air Pollution Control Board v. City of Richmond,* (1983) Ind.App., 443 N.E.2d 1262.

issuance of a warrant may be based not only on specific evidence of an existing violation 16 but also on a showing that "reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular [establishment]." *Camara v. Municipal Court,* 387 U.S. [523], at 538, 87 S.Ct. [1727] at 1736 [18 L.Ed.2d 930]. A warrant showing that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources such as, for example, dispersion of employees in various types of industries across a given area, and the desired frequency of searches in any of the lesser divisions of the area, would protect an employer's Fourth Amendment rights.[17] We doubt that the consumption of enforcement energies in the obtaining of such warrants will exceed manageable proportions.

. . . .

17. The Secretary, Brief for Petitioner 9 n. 7, states that the Barlow inspection was not based on an employee complaint but was a "general schedule" investigation. "Such general inspections," he explains, "now called Regional Programmed inspections, are carried out in accordance with criteria based upon accident experience and the number of employees exposed in particular industries. U.S. Department of Labor, Occupational Safety and Health Administration, Field Operations Manual, *supra,* 1 CCH Employment Safety and Health Guide ¶ 4327.2 (1976)." *Id.* at 320–21, 98 S.Ct. at 1825. The focus of the trial court then must be on the reasonableness of the standard as applied to a particular company. *See also State v. Kokomo Tube Co.,* (1981) Ind.App., 426 N.E.2d 1338. The trial court erred in holding the Program was a "rule" and by failing to properly focus his inquiry when reviewing the probable cause for the search warrant.

## II. Probable Cause

Frank Foundries contends the affidavits submitted by Crowder and Faulkner were insufficient to establish probable cause for the issuance of a search warrant because they failed to show the Target Industries Program "was reasonable, derived from neutral criteria or neutrally applied to Frank Foundries." This issue is substantially similar to the issue raised in *State v. Kokomo Tube Co.,* (1981) Ind.App., 426 N.E.2d 1338.

In *Kokomo Tube,* the Second District rejected the notion that the probable cause standard for OSHA searches should be governed by strict criminal law standards. *Id.* at 1342. Relying upon the leading United States Supreme Court case in the area of administrative searches, *Marshall v. Barlow's, Inc.,* (1978) 436 U.S. 301, 307, 98 S.Ct. 1816, 1818, 56 L.Ed.2d 305, the court endorsed a lesser standard of probable cause for obtaining an IOSHA search warrant. *Kokomo Tube* 426 N.E.2d at 1346. That standard is identical to the one set forth in *Marshall. Marshall, supra.* Frank Foundries acknowledges the veracity of this rule but contends it was not met in the present case.

The affidavits submitted in support of the search warrant were adequate under the standard enumerated in *Marshall* and *Kokomo Tube.* They describe in detail the administrative standards used to classify employers into industries based on type of economic activity. The affidavit also lists those neutral principles which support the decision to seek a search warrant. Number of lost work days and other statistical information are used to determine which industries have the highest hazard ratings. This information is then used to select the most hazardous industries for administrative searches. By establishing these neutral criteria for inclusion in the Target Industries Program the Commissioner of Labor has met the requirements for issuance of a search warrant under *Marshall, Kokomo Tube,* and other applicable cases.

## III. Res Judicata

Frank Foundries also argues the matter of the search warrant is res judicata since

the issue already has been litigated. The Commissioner of Labor previously sought a search warrant on March 4, 1980, for the search of Frank Foundries for IOSHA violations. The issue was resolved in the same manner as the present one, i.e., the quashing of the search warrant. Frank Foundries concludes that matter meets all of the requirements of res judicata and is therefore non-justiciable.

The doctrine of res judicata has four elements. They are:

1. The former judgment must have been rendered by a court of competent jurisdiction;

2. The matter now in issue was, or might have been determined in a former suit;

3. The particular controversy adjudicated in the former action must have been between the parties to the present suit; and

4. Judgment in the former suit must have been rendered on the merits.

Frank Foundries's argument fails on the second element. Although the issue litigated in each instance was virtually identical, there is a cardinal difference. Each search warrant application was a distinct justiciable matter, supported by independent proof. Under the criteria of the Target Industries Program, any targeted business may be examined once a year for safety violations. Thus, the State argues the subject matter of the instant litigation is distinct and not subject to res judicata.

Res judicata is divided into two parts, estoppel by judgment and estoppel by finding or verdict. *Town of Flora v. Indiana Service Corporation,* (1944) 222 Ind. 253, 53 N.E.2d 161. Estoppel by judgment occurs when a party attempts to relitigate the same cause of action in a subsequent proceeding. Estoppel by verdict will be effective when a party attempts to relitigate an issue conclusively decided in the former action. In either case the result is the same, it is binding on the parties to the former decision. *Illinois Central & Gulf R.R. Co. v. Parks,* (1979) Ind.App., 390 N.E.2d 1078.

Even if a party can show the propriety of the application of the doctrine of res judicata, it will not be applied if the underlying decision was based on more than one issue. When there is any question as to what was decided, res judicata is only effective as to the facts which were necessary to sustain the judgment. *Peterson v. Culver Educational Foundation,* (1980) Ind.App., 402 N.E.2d 448. It is unclear what was decided in the previous action. The record does not include the recitation of the judgment entered in the former proceeding. A minute entry is included but it is not a substitute for an order book entry. *State ex rel. Mammouth Development & Construction Consultants, Inc. v. Superior Court of Marion County,* (1976) 265 Ind. 573, 357 N.E.2d 732. It is, therefore, impossible to determine which issue served as the basis for the previous decision in the matter. The application of res judicata in this instance would be improper.

The decision of the Delaware Superior Court is reversed and remanded for further proceedings consistent with this opinion.

YOUNG, P.J., and MILLER, J., concur.