**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant (Garnishee Defendant Below),**

v.

**Kara GLASGOW (Plaintiff Below) and Gerald Weist, Jr. (Defendant Below), Appellees.**

No. 4-1283A432.

Court of Appeals of Indiana, Fourth District.

June 5, 1985.

Rehearing Denied June 27, 1985.

Kelvin L. Roots, Patrick Wilkinson Goeller & Modesitt, Terre Haute, for appellant (Garnishee defendant below).

Robert D. Hepburn, Cox Zwerner Gambill & Sullivan, Terre Haute, for appellees.

MILLER, Presiding Judge.

On November 10, 1983, the plaintiff-appellee, Kara Glasgow, filed a small claims action in the Vigo County Court against Gerald Weist, Jr., judgment-defendant and appellee. The small claims notice alleged that Weist had caused damage to Glasgow's automobile in an incident at a filling station in which Weist's car collided with Glasgow, but the notice did not state a

theory of recovery. State Farm Mutual Automobile Insurance Company, garnishee-defendant and appellant, was Weist's insurer and had notice of the claim against Weist but refused to defend him, claiming Weist deliberately and intentionally drove his car into Glasgow's. At the conclusion of the small-claims trial on March 3, 1983, the trial judge stated from the bench that damage to Glasgow's car had been caused by Weist's negligent acts, and that he would enter judgment accordingly. The trial court's order book entry recording this judgment, however, did not include any finding of negligence, but merely found for the plaintiff and against the defendant, assessing judgment against Weist in the sum of $850.00.

Glasgow then filed for proceedings supplemental to execution of the judgment, seeking recovery from State Farm as Weist's insurer. *See* Ind.Rules of Procedure, Trial Rule 69(E). The special judge who presided over the proceedings supplemental heard evidence from State Farm, over Glasgow's objection, in support of State Farm's contention that Weist had intentionally caused the damage to Glasgow's car and that the claim, therefore, was not covered by Weist's insurance policy. The special judge took Glasgow's objection to this evidence under advisement and, on October 20, 1983, entered the following findings of fact and conclusions of law:

"[FINDINGS OF FACT]

1. Claimant filed a small claim against Defendant on November 10, 1982, alleging that Defendant caused damage to Claimant's automobile which small claim 'notice' does not specify a legal theory.

2. That at all times material to this action, Defendant was an 'insured party' under a policy of liability insurance issued by Garnishee Defendant, State Farm Mutual Automobile Insurance Company (hereinafter 'State Farm').

3. State Farm had notice of this action and chose not to provide a defense for Defendant.

4. That State Farm waived all policy defenses by its statement of contentions filed herein other than that the act of the Defendant was 'intentional' and therefore outside the scope of the policy.

5. That a 'hearing' was held before the Honorable John Kite on the 3rd day of March, 1983, and the Court entered judgment in favor of the Claimant and against the Defendant in the sum of $850.00 '... as a result of the negligent acts of Mr. Weist ...' Judgment was entered accordingly.

6. That more than sixty (60) days elapsed thereafter and State Farm did nothing until such time as it was made a party to the instant litigation and proceeding supplemental.

7. That this Court is without jurisdiction to change the special finding of negligence of the Honorable John Kite for the reason that the only course to a person aggrieved by special finding is the filing of a Motion to Correct Errors and an Appeal to the Indiana Court of Appeals.

8. That State Farm's policy provides coverage for the negligence of its insured and is an asset available to the Defendant from which Claimant's judgment may be satisfied.

CONCLUSIONS OF LAW

1. That Claimant recovered judgment against Defendant on March 3, 1983, as a result of the 'negligence' of the Defendant.

2. That at all times material hereto, State Farm had a liability policy covering Defendant's negligent acts which policy is an asset from which Claimant's judgment may be satisfied.

3. That State Farm owes Claimant the sum of $850.00 plus the statutory interest from March 3, 1983, plus the costs of this action.

Judgment accordingly."

(R. 126–27).

State Farm filed a timely motion to correct errors, which the special judge denied.

Attached to the order denying the motion was the following memorandum, signed by the special judge.

### "MEMORANDUM

Having reviewed Garnishee Defendant's Motion to Correct Errors, the Court is unpersuaded that the Special Judge is being asked to do anything other than reverse a special finding that was made by the regularly sitting Judge of the Court. Garnishee Defendant, State Farm Mutual Automobile Insurance Company (hereinafter 'State Farm') admits (during the Pre-Trial Conference) that it had notice of the litigation and made a determination not to defend, not to defend under reservation of rights, or hire counsel to protect the interest of its insured. Neither has it asked to intervene nor has it filed a declaratory judgment. The Court's ruling is simply that the Special Judge does not sit as a Court of review in proceedings following the expiration of the sixty (60) day limit for the filing of a Motion to Correct Errors. For the reasons stated in the Findings of

Fact and Conclusions of Law with this amplification, I have ruled as I did." (R. 136).

On appeal, State Farm argues that the above findings of fact, conclusions of law and memorandum make it clear that the special judge believed that the trial court in the underlying tort action made a "special finding" that Weist's negligence caused Glasgow's damages, and that both he and State Farm were bound by the finding of negligence. The result, State Farm argues, is that the special judge refused to consider the evidence that Weist acted intentionally in causing Glasgow's damages, going no farther than to rely on the "special finding of negligence" made in the underlying tort action. As a consequence, State Farm contends, the special judge erroneously concluded that State Farm was liable to Glasgow under the terms of the policy insuring Weist.[1]

As briefed by the parties, the issues on appeal are:

I. Whether State Farm was collaterally estopped from litigating the issue of whether Weist acted negligently or intentionally in causing Glasgow's damages? [2]

---

1. Under the relevant portion of the insurance policy, State Farm agreed to:
 "1. pay damages which an insured becomes legally liable to pay because of:
 a. bodily injury to others and
 b. damage to or destruction of property including loss of its use, caused by accident resulting from the ownership, maintenance or use of your car; and
 2. defend any suit against an insured for such damages with attorneys hired and paid by us."
 (R. 68). State Farm also reserved the right to investigate any claim or lawsuit under the policy. (*Id.*) For purposes of this appeal, the parties apparently agree that if the damages to Glasgow's car resulted from Weist's negligent acts, then the damages were "caused by accident," and State Farm is liable. Conversely, if Weist intentionally caused the damages, they are not covered by the policy. *Cf. American Economy Insurance Co. v. Liggett* (1981), Ind. App., 426 N.E.2d 136 (public policy does not permit guilty party to profit from wrongdoing).

2. As discussed later in this opinion, State Farm's first allegation of error is clearly aimed at the special judge's Finding of Fact number 7, which was not phrased in terms of collateral estoppel,

but rather in terms of "jurisdiction" and, by implication, Trial Rule 59. Although Trial Rule 59 explicitly authorizes only the trial court or "any party" to make a motion to correct error, T.R. 59(B), and although State Farm was not a party to the underlying tort action, nevertheless, Trial Rule 24(C) states: "Intervention after trial or after judgment for purposes of a motion under Rules 50, 59, or 60, or an appeal may be allowed upon motion." Thus, State Farm could have sought permission to intervene in the underlying tort action, even after judgment, for the purpose of filing a motion to correct error to attack the "special finding" of Weist's negligence. *See North v. Newlin* (1981), 416 N.E.2d 144, 147 n. 6. However, because we ultimately determine that collateral estoppel does not apply here because there was, in fact, no such "special finding" of negligence that could have bound State Farm, there was actually nothing for it to attack with a motion to correct error. Therefore, State Farm's failure to intervene and file a Trial Rule 59 motion did not deprive the special judge of the jurisdiction to decide independently whether Weist acted negligently or intentionally in causing Glasgow's damages. Thus, the issue of collateral estoppel is ultimately dispositive of this case, and we shall address

II. Whether the evidence was sufficient to support the judgment of the special judge in the proceedings supplemental?

Additional facts will be recited where relevant. We reverse and remand for further proceedings.

## I.

In cases such as this, where the special judge entered findings of fact on his own motion, this court will not set aside such findings unless clearly erroneous. T.R. 52(A); *Baker v. Compton* (1983), Ind. App., 455 N.E.2d 382. On the other hand, when the error complained of is the correctness of the trial court's application of the law, we must correctly apply the law to the findings made by the trial court. *Brokus v. Brokus* (1981), Ind.App., 420 N.E.2d 1242. State Farm's initial allegation of error—that the special judge erred in holding the issue of Weist's negligent or intentional conduct conclusively decided by the "special finding" of negligence in the underlying tort action—is directed at the special judge's Finding of Fact number 7, *supra.* This finding, however, is unmistakably a mix between a finding of fact (that the trial judge in the underlying tort action made a "special finding of negligence") and a conclusion of law (that State Farm was collaterally estopped from litigating the question of whether Weist acted negligently or intentionally in causing Glasgow's damages, *see supra,* n. 2). State Farm's first allegation ultimately implicates both the finding of fact element as being clearly erroneous and the conclusion of law element as being based on the special judge's misapplication of the law to the facts found. We must determine whether the special judge committed an error of law in making this finding of fact or in reaching this conclusion of law.[3] *Baker v. Compton, supra; Brokus v. Brokus, supra.*

Collateral estoppel—also known as "issue preclusion" and "estoppel by verdict"—applies "when a particular issue is adjudicated and then is put into issue in a subsequent suit on a different cause of action between the same parties or those in privity with them." *State v. Speidel* (1979), 181 Ind.App. 448, 452, 392 N.E.2d 1172, 1175. An additional requirement to the application of collateral estoppel is that there must be "mutuality of estoppel" between the party asserting the doctrine and the party against whom it is asserted. *Id.* "Estoppel is mutual if the one taking advantage of the prior adjudication would have been subsequently bound had the prior judgment gone the other way." *Id.* at 456, 392 N.E.2d at 1177. For purposes of this case, we assume, though we do not decide, that State Farm was in privity with Weist, *see Snodgrass v. Baize* (1980), Ind. App., 405 N.E.2d 48, 51 (indemnitor generally considered in privity with indemnitee), and that mutuality of estoppel existed between Glasgow—the party allegedly asserting collateral estoppel—and State Farm—the party allegedly estopped.

Citing *Snodgrass v. Baize, supra,* State Farm argues that collateral estoppel does not apply to the present case because there existed a conflict of interest between State Farm and Weist, its insured. In *Snodgrass,* the plaintiff sued the insured, alleging in alternative counts that the insured shot him intentionally or negligently. The insurance company initially entered an appearance on the insured's behalf, but, upon perceiving a conflict of interest, withdrew from the case and paid the insured's personal attorney's fee. The insurer's attorney spelled out its position concerning the conflict and its non-waiver of exclusions under the insurance policy in two letters written to the insured's personal attorney.

State Farm's attack on Finding of Fact number 7 on that basis, as the parties themselves have.

3. *See* 5A J. MOORE, MOORE'S FEDERAL PRACTICE ¶ 52.05 (2d ed. 1984):
 "When a finding is a composite of fact and law it is not binding [on the appellate court] where the factual finding is induced by an error of law or where, although the factual finding is sound, the composite conclusion is based on an error of law."
 *Id.* at 52–121.

A jury returned a verdict for the plaintiff on the negligence count, whereupon the plaintiff brought proceedings supplemental against the insurance company. In upholding the trial court's judgment that the insurer was not liable to the plaintiff because the insured had acted intentionally, the *Snodgrass* court held that the insurance company was not bound by collateral estoppel to the underlying negligence verdict because of the conflict of interest between the insured and the insurance company:

> "In the instant case, the interests of the insured and the insurer were in partial conflict. The insured would benefit, to the extent of policy limits, from a finding of negligence which arguably was within the coverage of the policy. The insurer would favor a finding of an intentional tort which the policy did not cover. *See Farm Bureau Mutual Automobile Insurance Co. v. Hammer*, [ (4th Cir.1949) 177 F.2d 793]. In such a situation the insurer should not defend, but, rather, as here, should reimburse the insured's personal counsel. *All-Star Insurance Corp. v. Steel Bar, Inc.* (N.D. Ind.1971) 324 F.Supp. 160, 165. Because there was a partial conflict of interest and because [the insurer] could not rightfully have controlled [the insured's] defense, the rationale underlying the application of collateral estoppel does not apply."

405 N.E.2d at 51.[4] State Farm argues that an identical conflict of interest exists in the present case to preclude application of collateral estoppel in Glasgow's favor.

 It appears, however, that a conflict of interest such as to preclude the application of collateral estoppel arises only where: (1) the insurance company actually participates in some part of the insured's defense in the underlying tort action, either directly or by reimbursing the insured's personal attorney, *see Snodgrass v. Baize, supra; see also Cozzens v. Bazzani Building Co.* (E.D.Mich.1978), 456 F.Supp. 192; *Farmers Insurance Co. v. Vagnozzi* (1983), 138 Ariz. 443, 675 P.2d 703 (en banc); *Cowan v. Insurance Company of North America* (1974), 22 Ill.App.3d 883, 318 N.E.2d 315; and (2) the insurance company gives its insured clear and prompt notice of the existence and nature of the conflict of interest, and its implications for the insured, *see Snodgrass v. Baize, supra; see also Cozzens v. Bazzani Building Co., supra; Farmers Insurance Co. v. Vagnozzi, supra; Maryland Casualty Co. v. Peppers* (1976), 64 Ill.2d 187, 355 N.E.2d 24; *Cowan v. Insurance Company of North America, supra.* Both of the above requirements may be met where the insurance company defends its insured under a reservation of rights in the underlying tort action. *See Cowan v. Insurance Company of North America, supra.* The insurance company may also protect itself from the conflict of interest by filing a declaratory judgment action, prior to the entry of judgment in the underlying tort action, seeking a declaration of its rights and duties under the policy of insurance relative to the claim against its insured. *See id.; Maryland Casualty Co. v. Peppers, supra.* In the present case, however, State Farm refused to defend Weist from the moment it had notice of Glasgow's action against him, did not seek a declaratory judgment, and did not raise the issue of a conflict of interest until after the final hearing on the proceedings supplemental, too late to constitute clear and prompt notice of the conflict to its insured. *See Cozzens v. Bazzani Building Co., supra.*

---

4. The premise underlying this holding was stated in *Farm Bureau Mutual Insurance Co. v. Hammer* (4th Cir.1949), 177 F.2d 793:

> "The underlying purpose of the doctrine [of collateral estoppel] is to obviate the delay and expense of two trials upon the same issue— one by the injured party against the indemnitee and the other by the indemnitee, or the injured party against the indemnitor. This is possible because it is assumed that the interests of the parties to the contract of indemnity in opposing the injured person's claim are identical; and it is accomplished by giving the indemnitor an opportunity to appear in the first suit on behalf of the indemnitee so that everything that can be offered in exculpation of the indemnitee by either party to the indemnity contract may be presented."

*Id.* at 799, *quoted in Snodgrass v. Baize,* 405 N.E.2d at 51.

■ Thus, the application of collateral estoppel to the present case is not precluded by the existence of any conflict of interest as it was in *Snodgrass v. Baize, supra.* Nevertheless, we believe it would be improper to apply collateral estoppel to the issue of whether Weist acted negligently or intentionally based on the judgment in the underlying tort action. Our supreme court has stated: "The application of the principle of collateral estoppel involves a two step process: (1) determine what the first judgment decided; and (2) examine how that determination bears on the second case." *Webb v. State* (1983), Ind., 453 N.E.2d 180, 183, *cert. denied,* — U.S. —, 104 S.Ct. 1449, 79 L.Ed.2d 767. In determining what the underlying tort judgment decided, we are faced with the contrasting statements made by the trial judge who decided that action. From the bench, he stated: "It would appear to me that the value of [Glasgow's] car was diminished as a result of the negligent acts of Mr. Weist in the sum of $850.00 And [the court] will enter judgment accordingly." (R. 173). The order book entry recording this judg-

ment, however, did not include any finding of negligence, but merely stated: "The Court being duly advised now finds for the plaintiff and against the defendant and finds plaintiff's damages to be in the sum of $850.00." (R. 16). The question is, then, what did the underlying judgment decide? *Webb v. State supra.*

■ It is well-settled that a court of record speaks only through its order book entries. *Anderson v. Indiana State Employees' Appeals Commission* (1977), 172 Ind.App. 529, 360 N.E.2d 1040 (citing *State ex rel. Mammonth Development & Construction Consultants, Inc. v. Superior Court* (1976), 265 Ind. 573, 357 N.E.2d 732). By statute, the Vigo County Court is a court of record.[5] See IC 33–10.5–7–8 (1982). In *State ex rel. Mammonth, supra,* one of the issues was whether the respondent-trial court lacked jurisdiction to place the relator-construction company in receivership because the construction company was never served with notice of the hearing in which the trial court appointed the receiver. The respondent-trial court

---

5. We are aware that the underlying tort action was brought as a small claims action in the Vigo County Court and that the small claims courts in Marion County are *not* courts of record under IC 33–11.6–1–4 (1982). Nevertheless, we believe the legislature intended county courts sitting in judgment on small claims actions to be courts of record. IC 33–10.5–7–1(2) requires each judge in a county court to maintain a small claims docket. Section 2 of the same statute provides that the practice and procedure in the county courts is to be as provided by statute and by the Indiana rules of procedure as adopted by our supreme court, IC 33–10.5–7–2, with three exceptions to be followed when the county court hears a small claims action: (a) the appearance by the defendant or his attorney is to be deemed to satisfy the requirement that an answer be filed; (b) a continuance is to be granted at trial if the complaint is too vague to permit the defendant to determine what the plaintiff is claiming or if the defendant raises a defense or compulsory counter-claim that surprises the plaintiff; and (c) the trial itself is to be informal and not bound by the rules of procedure or statutes except regarding privileged communications and offers a compromise. *Id.* § 2(a)–(c). As noted, IC 33–10.5–7–8 makes the county court a court of record.

The only "small claims exception" that might render a county court *not* a court of record

when hearing a small claims action is paragraph 2(c). However, we do not believe this exception embraces the court of record statute, IC 33–10.5–7–8, because the avowed purpose of the informality prescribed by paragraph 2(c) is to promote the "sole objective of dispensing speedy justice between the parties according to the rules of substantive law." IC 33–10.5–7–2(c). Removing the court's proceedings from the record would not necessarily promote that objective, and it would seriously hamper our review of appeals taken in small claims actions from county courts, which come directly to this court. *See* IC 33–10.5–7–10; Appellate Rule 4(A). On the other hand, decisions of Marion County small claims courts, which are not courts of record, IC 33–11.6–1–4, are appealed to the circuit or superior court of that county for trial de novo, IC 33–11.6—33–11.6–4–14, rendering unnecessary for review purposes the keeping of a record of the small claims action. Thus, while the legislature could have made an exception removing county courts from the record when hearing cases from their small claims dockets, as the legislature did with the Marion County small claims courts, we believe the legislature intended the county courts to be courts of record at all times, even when hearing a small claims action.

argued the transcript of the hearing, in which the court made statements indicating the relator-construction company had received notice, established the fact that notice actually was received. Our supreme court disagreed:

"Such 'fact' fails in two regards: The transcript is not certified by the court or the reporter, nor was it made a part of the record; *more importantly, the alleged finding that notice was given relator, is not an order book entry.* It is a rule of long standing that the court speaks only through its order book. *Epps v. State* (1963), 244 Ind. 515, 192 N.E.2d 459. Thus, respondents' argument fails."

265 Ind. at 576, 357 N.E.2d at 733 (emphasis added).

 Thus, it appears that even a silent order book controls statements made from the bench regarding matters that ought to be reflected by an order book entry. The entry of judgment is such a matter. *See* Ind.Rules of Procedure, Trial Rule 58. Therefore, the order book entry of the trial court in the underlying tort action—silent on the question of Weist's negligence—controls the purported "special finding" of negligence made from the bench. The result is that there was no "special finding" of negligence to which State Farm could be bound by collateral estoppel. Therefore, the finding of fact element of the special judge's Finding of Fact number 7 (that the trial judge in the underlying tort action made a "special finding of negligence") was clearly erroneous and must be reversed. *Baker v. Compton, supra.*

 Furthermore, even if the order book entry did not "control" the initial question of what was decided in the underlying tort action, *see Webb v. State,* the divergence between the entry and the statement from the bench would, at least, create some doubt as to what was decided. When such doubt arises, the application of collateral estoppel "is only effective as to facts which were necessary to sustain the judgment." *In re a Search Warrant, etc.* (1983), Ind.App., 448 N.E.2d 1089, 1094.

The only facts *necessary* to sustain the judgment of the trial court in the underlying tort action were those that established that Weist's conduct was the legally sufficient cause of the damage to Glasgow's car, by whatever means. For the purpose of establishing Weist's liability to Glasgow under the latter's small claims notice, it was not necessary for the trial court to find that Weist acted negligently or that he acted intentionally, but only that his conduct was the legal cause of the damage complained of. The application of collateral estoppel in the present case, therefore, would be proper only on the issue of Weist's liability and not on the issue of whether such liability was covered by the State Farm insurance policy. *In re a Search Warrant, supra; accord, Cowan v. Insurance Co. of North America, supra.* Thus, the conclusion of law element of Finding of Fact number 7 (that State Farm was collaterally estopped from litigating the issue of whether Weist acted negligently or intentionally in causing Glasgow's damages, *see supra,* n. 2) resulted from the special judge's misapplication of the law and must be reversed. *Brokus v. Brokus, supra.*

In conclusion, we hold that the purported "special finding" of negligence in the underlying tort action did not collaterally estop State Farm in the proceedings supplemental from litigating the issue of whether Weist acted negligently or intentionally in causing Glasgow's damages. By refusing to look beyond that "special finding," the special judge might have determined erroneously that State Farm was liable to pay Glasgow for the damages caused by Weist. This brings us to State Farm's second allegation of error.

### II.

State Farm asks that we order an entry of judgment in its favor on the ground that the evidence in the proceedings supplemental was insufficient to sustain the special judge's judgment that State Farm is obligated to pay Glasgow for the damages caused by Weist. We decline to do so.

Because the special judge refused to look beyond the "special finding" of negligence made in the underlying tort action, and because we believe there is, at least, significant doubt that the trial judge in the underlying action actually decided the question of Weist's negligence, since his order book is silent on that question, we do not believe that either the trial judge or the special judge has ever considered all the evidence and ruled definitively on the issue that, apparently, will decide whether Glasgow's damages were caused "by accident" as that term is used in Weist's insurance policy.

We are a court of review and will not decide such an issue until it properly has been decided at the trial level. *See Brown v. Poulos* (1980), Ind.App., 411 N.E.2d 712; *Citizens National Bank v. Harvey* (1976), 167 Ind.App. 582, 339 N.E.2d 604; 4A BAGNI, GIDDINGS & STROUD, INDIANA APPELLATE PROCEDURE § 130 at 171–72 (1979). Therefore, we reverse and remand for a full hearing on the issue of whether Glasgow's damages were caused "by accident" under the policy of insurance issued by State Farm covering Weist.[6]

CONOVER and YOUNG, JJ., concur.

---

6. Glasgow's request for enhanced damages pursuant to Appellate Rule 15(G) is denied.